NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 47

No. 23-AP-291

| | |
|---|---|
| John Echeverria and Carin Pratt | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Civil Division |
| | |
| Town of Tunbridge | May Term, 2024 |

Elizabeth D. Mann, J.

Geoffrey J. Vitt of Vitt & Nunan, PLC, Norwich, for Plaintiffs-Appellants/Cross-Appellees.

Stephen F. Coteus and Michael J. Tarrant II of Tarrant, Gillies & Shems, LLP, Montpelier, for
  Defendant-Appellee/Cross-Appellant.


PRESENT:  Reiber, C.J., Eaton, Cohen and Waples, JJ., and Dooley, J. (Ret.),
          Specially Assigned


¶ 1.     **EATON, J.**  Plaintiffs John Echeverria and Carin Pratt appeal the dismissal of their complaint seeking a declaration that the Town of Tunbridge does not have the authority to conduct or authorize maintenance or repair activities on legal trails within the town. The trial court held that there was no actual or justiciable controversy and dismissed the action as unripe. We conclude that plaintiffs alleged sufficient facts to demonstrate that the matter is ripe for adjudication and therefore reverse and remand for further proceedings.

¶ 2.     In January 2023, plaintiffs filed a complaint for declaratory judgment alleging the following facts. Plaintiffs own a 325-acre property in Tunbridge, Vermont. The property is crossed by two of the four legal trails in Tunbridge: a 0.72-mile trail known as the Orchard trail

and a 0.70-mile trail known as the Baptist Hill trail. The Town selectboard created these trails in 1987 by discontinuing former Class 4 roads and converting them to legal trails.

¶ 3.      In 2021, the selectboard adopted a revised town plan recommending that the selectboard establish a policy for permitted uses on legal trails. The current town policy permits use of the public trails for walking only. In 2020 or 2021, bicycling advocates launched a campaign to persuade the Town to expand the public uses of legal trails to include bicycling. Bicycling advocates and other trail users also advocated to the selectboard that the Town has the legal right to maintain and repair legal trails and asked the Town to delegate this authority to volunteers willing to perform the work. Plaintiffs oppose opening the legal trails to bicycle use. Plaintiffs assert that they have the sole and exclusive authority to decide whether and how to maintain the legal trails that cross their property and have historically exercised this right. In April 2022, the selectboard invited an attorney to present his views on the use and management of legal trails in Vermont. He opined that Vermont towns have discretionary legal authority to conduct maintenance and repair of legal trails.

¶ 4.      In June 2022, plaintiffs filed an action in the civil division seeking a declaratory judgment that they, rather than the Town, hold the legal authority to determine whether and how to maintain the legal trails on their property. The civil division dismissed the action as unripe in December 2022.

¶ 5.      In August 2022, while the first suit was pending, the selectboard adopted a new policy for maintenance and repair of legal trails. According to plaintiffs, this was the first time in the Town's history that it had formally asserted authority to maintain and repair legal trails. The policy established a process for private individuals to apply for and receive permission to exercise

2

the Town's authority to maintain and repair legal trails. The chair of the selectboard told plaintiffs that the Town would "sit on" the procedure until plaintiffs' then-pending suit was resolved.[1]

¶ 6. In their second complaint, plaintiffs again alleged that they have the sole and exclusive authority to decide whether and how to maintain the legal trails that cross their property. They alleged that the expected entry onto their property by volunteers seeking to exercise the Town's maintenance authority will adversely affect their plan to maintain the trails as natural forest paths and minimize destruction of vegetation on the trails. They further alleged that such entry would constitute a trespass and taking in violation of the Vermont and U.S. Constitutions. They sought a declaration that the selectboard does not have the legal authority to engage in maintenance or repair activities on the legal trails of the town or to delegate such authority to private individuals.

¶ 7. The Town moved to dismiss plaintiffs' complaint. It argued that plaintiffs were precluded from relitigating the issue of ripeness. Alternatively, the Town claimed that the matter continued to be premature because plaintiffs had not alleged that the Town had taken any justiciable action. The Town also argued that plaintiffs failed to state a claim for which relief could be granted because the Town had clear statutory authority to maintain legal trails.

¶ 8. The trial court granted the Town's motion to dismiss, ruling that the matter was not ripe for judicial consideration. It repeated its conclusion from the prior action that neither the allegations that bicycle advocates wished to change the permitted use of the trails nor the alleged discussions in town government regarding maintenance and use of the trails amounted to a case or

---

[1] In their appellate brief, plaintiffs make allegations about further actions taken by the selectboard since they filed their second complaint. These alleged facts are not part of the record on appeal under Vermont Rule of Appellate Procedure 10(a) and cannot be considered by this Court. State v. Brown, 165 Vt. 79, 82, 676 A.2d 350, 352 (1996). Plaintiffs also filed a motion for this Court to take judicial notice of actions taken by the selectboard at a May 2024 meeting just prior to oral argument in this appeal. We deny the motion as moot because we conclude that plaintiffs' complaint alleges sufficient facts to demonstrate the existence of an actual case or controversy. We therefore do not consider the post-complaint facts alleged in their brief or in the motion.

controversy. It acknowledged that plaintiff's second complaint added allegations about the new trail maintenance policy and procedure for volunteers to carry out maintenance activities, but reasoned that plaintiffs had not alleged that anyone had applied or received permission to perform maintenance on the trails, and therefore there had been no new threat to plaintiffs' interests. Both parties appealed to this Court.

¶ 9. On appeal, plaintiffs argue that they alleged sufficient new facts demonstrating that the matter is ripe for adjudication. The Town counters that plaintiffs are precluded from relitigating the issue of ripeness, and alternatively that the matter is still not ripe.

¶ 10. "We review a trial court's dismissal for lack of subject matter jurisdiction de novo, with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." Town of Bridgewater v. Dep't of Taxes, 173 Vt. 509, 510, 787 A.2d 1234, 1236 (2001) (mem.) (quotation omitted). A motion to dismiss for lack of subject-matter jurisdiction "will not be granted unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Murray v. City of Burlington, 2012 VT 11, ¶ 2, 191 Vt. 597, 44 A.3d 162 (mem.) (quotations omitted).

I. Issue Preclusion

¶ 11. We begin by addressing the Town's argument that plaintiffs were precluded from relitigating the issue of ripeness because that issue was decided against them in the previous action.

¶ 12. Ripeness is a prerequisite to subject-matter jurisdiction, and therefore a dismissal for lack of ripeness is properly viewed as a dismissal for lack of jurisdiction. Ferry v. City of Montpelier, 2023 VT 4, ¶ 11, 215 Vt. 450, 296 A.3d 749 (recognizing ripeness as prerequisite to Vermont courts' subject-matter jurisdiction over case); accord Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric., 378 F.3d 1132, 1135 (10th Cir. 2004) ("Ripeness is a jurisdictional issue."). Vermont Rule of Civil Procedure 41(b) provides that a dismissal for lack of jurisdiction is not an adjudication on the merits. V.R.C.P. 41(b)(3); U.S. Bank Nat. Ass'n v. Kimball, 2011 VT 81,

¶ 22, 190 Vt. 210, 27 A.3d 1087. Thus, a dismissal based on ripeness does not prevent a party from refiling the action because of claim preclusion. See Bank of La. v. Fed. Deposit Ins. Corp., 33 F.4th 836, 838 (5th Cir. 2022) (explaining that dismissal based on jurisdictional defect does not make case res judicata on substance of claim).

¶ 13. However, the party may be prevented from revisiting the specific jurisdictional issue that was the basis for dismissal by the doctrine of issue preclusion. See 18A C. Wright, A. Miller, & E.H. Cooper, Federal Practice and Procedure § 4436 (3d ed.) ("Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question unless preclusion is denied for some other reason."). The doctrine of issue preclusion, also known as collateral estoppel, generally prohibits a party from "relitigating an issue that was decided in a previous action." In re M.V., 2022 VT 31, ¶ 26, 216 Vt. 491, 504, 282 A.3d 941 (quotation omitted). Under Vermont law, a party is precluded from relitigating an issue if the following elements are met:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). "In deciding whether issue preclusion is appropriate, we balance our desire not to deprive a litigant of an adequate day in court against a desire to prevent repetitious litigation of what is essentially the same dispute." Stevens v. Stearns, 2003 VT 74, ¶ 13, 175 Vt. 428, 833 A.2d 835 (quotation omitted).

¶ 14. Here, the first element of issue preclusion is satisfied because the parties in this action are the same as the parties in the first action. The second element is also met because the issue of ripeness was resolved by a final judgment in the first action. However, we are not

5

persuaded that the other elements are satisfied.  The general issue of ripeness is the same, but the relevant facts are not identical.  Plaintiffs' second complaint alleges new facts to support the justiciability of their claim: the selectboard's adoption of a formal policy asserting the Town's right to maintain legal trails and a procedure allowing volunteers to apply for permission to exercise that right on its behalf.  These facts were not available at the time plaintiffs filed their first complaint.  Plaintiffs mentioned these additional facts in their opposition to the motion to dismiss the first action and submitted a copy of the application form created by the selectboard. The Town argued that the trial court could not consider the new allegations because they were not part of the complaint.  The trial court noted the existence of the form, which it suggested would not cure the ripeness issue, but did not mention the other allegations or rely on them in reaching its ultimate conclusion.  Under these circumstances, we cannot say that plaintiffs had a full and fair opportunity to litigate the issue.  See In re Apple Hill Solar LLC, 2019 VT 64, ¶ 23, 211 Vt. 54, 64, 219 A.3d 1295 (declining to apply issue preclusion where applicant withdrew appeal and filed new petition at administrative agency's suggestion because applicant did not have "full and fair opportunity to litigate the issue").  And because, as discussed below, these facts cured the lack of ripeness, we conclude that it would not be fair to apply preclusion here.

¶ 15.    The Town acknowledges that ripeness is a "curable defect," and as such, "a second action on the same claim is permissible after correction of the deficiency."  Wolfson v. Brammer, 616 F.3d 1045, 1064 (9th Cir. 2010); see Park Lake, 378 F.3d at 1137 (acknowledging that "suit may be brought again where a jurisdictional defect has been cured or loses its controlling force" (quotation omitted)); Wright, Miller, & Cooper, supra, § 4436 (explaining that dismissal for lack of justiciability "should preclude relitigation of the very issue of justiciability actually determined, but does not preclude a second action on the same claim if the justiciability problem can be overcome"); Restatement (Second) of Judgments § 20 (1982) (explaining that final judgment for defendant based on prematurity of plaintiff's action typically does not bar another action by

6

plaintiff brought after claim has matured). However, the Town urges us to adopt the view of some federal courts that "the change in circumstances that cures the jurisdictional defect must occur subsequent to the prior litigation." Park Lake, 378 F.3d at 1137; see also Dozier v. Ford Motor Co., 702 F.2d 1189, 1192 (D.C. Cir. 1983) (holding jurisdictional deficiency can only be remedied by "occurrences subsequent to the original dismissal").

¶ 16. This requirement is logical when the jurisdictional deficiency is a question of standing or amount in controversy, as a litigant should be expected to adequately plead facts demonstrating those jurisdictional requirements in the first instance. See Dozier, 702 F.2d at 1192 (holding that plaintiff was precluded from refiling diversity suit with new allegations of amount in controversy because facts underlying those allegations were known to plaintiff at time of first suit, which was dismissed for lack of statutory amount in controversy); In re V&M Mgmt., Inc., 321 F.3d 6, 9 (1st Cir. 2003) (holding that plaintiff was precluded from relitigating issue of standing based on factual allegations available to him in prior suit). Under the circumstances of this case, however, we believe that it would be unfair to apply preclusion to the ripeness issue where critical new facts arose while the parties were litigating dismissal and the trial court declined to address them. See Trepanier, 155 Vt. at 265, 583 A.2d at 587 (explaining that courts must examine circumstances of each case to determine whether preclusion is appropriate). This is not a case where the plaintiffs are attempting to "game the system" by altering previous factual allegations in response to a dismissal. Cf. Dozier, 702 F.2d at 1192; see Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 488 F.2d 75, 76 (5th Cir. 1973) (holding that dismissal for failure to make required jurisdictional allegations did not bar subsequent suit where no indication that plaintiff "disobeyed" court by failing to amend complaint (quotations omitted)); Cassidy v. Bd. of Educ. of Prince George's Cnty., 557 A.2d 227, 232 (Md. Ct. App. 1989) (declining to apply Dozier rule where plaintiff "merely failed to plead notice" and had "not changed her representation of past facts"). We therefore conclude that plaintiffs are not barred from relitigating the issue of ripeness here.

## II. Ripeness

¶ 17. The primary issue on appeal is whether this matter is ripe for judicial review. "Vermont courts are vested with subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests." Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286. A claim is ripe "when there is a sufficiently concrete case or controversy, as opposed to one that is abstract or hypothetical." Skaskiw v. Vt. Agency of Agric., 2014 VT 133, ¶ 31, 198 Vt. 187, 112 A.3d 1277 (quotation omitted). "Courts will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future." In re Robinson/Keir P'ship, 154 Vt. 50, 57, 573 A.2d 1188, 1192 (1990).

¶ 18. The requirement of an actual case or controversy applies to declaratory judgment actions. Wood v. Wood, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977). "Unless an actual or justiciable controversy is present, a declaratory judgment is merely an advisory opinion[,] which we lack the constitutional authority to render." Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318 (1991). "Thus, declaratory relief is available only when a party is suffering from the threat of actual injury to a protected legal interest." Id. (quotation omitted); see also Williams v. State, 156 Vt. 42, 60, 589 A.2d 840, 851 (1990) ("A mere abstract question or hypothetical threat is not a sufficient basis for a declaratory judgment."). However, "a person is not required to wait for 'the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.' " Doe v. Dep't for Child. & Fams., 2020 VT 79, ¶ 12, 213 Vt. 151, 249 A.3d 665 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 297 (1979)). "A court faced with a request for declaratory relief must look at the litigation situation as a whole in determining whether it is appropriate to entertain the request for such relief." Burlington Sch. Dist. v. Provost, 2019 VT 87, ¶ 15, 211 Vt. 277, 224 A.3d 841 (quotations omitted).

¶ 19. We conclude that plaintiffs have satisfied the actual-case-or-controversy requirement here. Plaintiffs allege that the Town has adopted a new policy for maintenance and

8

repair of legal trails. According to plaintiffs, this is the first time in the Town's history that it has formally asserted authority to maintain and repair legal trails. The Town also established a process for private individuals to apply for and receive permission to exercise the Town's authority to maintain and repair legal trails. Two of the Town's four legal trails are on plaintiffs' property. In sum, the Town has taken concrete steps manifesting its intent to enter onto plaintiffs' property for the purpose of improving the trails. Assuming as we must for purposes of a motion to dismiss that these allegations are true, they demonstrate a sufficiently concrete threat of physical invasion and interference with plaintiffs' asserted right to control who enters or alters their property. See State v. Wood, 148 Vt. 479, 486, 536 A.2d 902, 906 (1987) (noting that "[o]ne of the main rights attaching to property is the right to exclude others" (quoting Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978))).[2]

¶ 20. This case is like others in which we have permitted a declaratory judgment action challenging a defendant's asserted legal authority to take some action against the plaintiff to proceed. In Gifford Memorial Hospital v. Town of Randolph, 119 Vt. 66, 118 A.2d 480 (1955), the plaintiff sought a declaration that it was exempt from paying property taxes on one of its buildings. The town argued that the matter was premature and that the plaintiff had a complete and adequate remedy by an action for the recovery of tax paid under protest or an appeal of its assessment. We explained that the Declaratory Judgments Act "opened to prospective defendants and to plaintiffs at an early stage of the controversy a right to petition for relief not heretofore possessed. In that sense, it has decidedly extended the power of courts to grant relief in cases otherwise within their jurisdiction to pass upon." Id. at 70, 118 A.2d at 483. We concluded that the plaintiff had alleged sufficient facts to show that an actual controversy existed because the

_____

[2] Plaintiffs also contend that the Town's actions threaten to cloud their title. We take no position on this argument because we conclude that plaintiffs have sufficiently alleged a different harm, which is the threat to physically invade and alter their property.

town had appraised the property and assessed tax due, and it was reasonable to expect that the town would take action to collect the tax if not paid. We reasoned that "[i]f the plaintiff had to wait until proceedings are brought or threatened to collect the tax, it would be subject to costs and penalties for not paying the tax when due. That would defeat the very purpose of the act." Id. at 71, 118 A.2d at 483. We rejected the argument that relief was unavailable because the plaintiff had other legal remedies, stating, "[w]here a controversy exists a proceeding for a declaratory judgment may be maintained even though another remedy is available." Id. at 71, 118 A.2d at 483-84.

¶ 21. Similarly, in Dernier v. Mortgage Network, Inc., 2013 VT 96, 195 Vt. 113, 87 A.3d 465, we held that a declaratory judgment action brought by plaintiffs challenging the enforceability of their mortgage and note was ripe for adjudication even though no party had initiated foreclosure proceedings against them. We explained that the mortgagee had declared the plaintiffs to be in default and we could infer that the agent had accelerated the note requiring the plaintiffs to pay the entire amount to avoid foreclosure. Id. ¶ 41. We reiterated our conclusion in Gifford that the availability of another remedy, namely, defending the foreclosure action, did not prevent the plaintiffs from seeking declaratory relief. Id. ¶ 43.

¶ 22. Likewise, in Flanders Lumber & Building Supply Co. v. Town of Milton, 128 Vt. 38, 45, 258 A.2d 804, 808 (1969), this Court held that the trial court properly asserted jurisdiction over a developer's declaratory judgment action challenging the validity of a town zoning and subdivision ordinance. We stated that "[a] person whose property would be harmfully affected by an amendment of a zoning ordinance has been regarded as entitled to bring proceedings for a declaratory judgment as to the validity of the amendment." Id. at 44, 258 A.2d at 808. We observed that "[i]f the question is one of law or jurisdiction of the Zoning Board of Adjustment, it is undoubtedly judicial economy and wisdom to decide the issue by declaratory judgment before the administrative channel has been invoked or exhausted." Id.

¶ 23. Finally, in the recent case of Watson v. Village at Northshore I Ass'n, 2018 VT 8, ¶ 66, 207 Vt. 154, 184 A.3d 1133, we held that the trial court erred in dismissing as nonjusticiable a condominium owner's challenge to a condominium association's bylaw requiring members who wished to address the board to give forty-eight hours' notice. We explained that the plaintiff argued that the forty-eight-hour rule, which the defendant conceded applied to board meetings, unlawfully restricted his ability to participate in board meetings under Vermont's Common Interest Ownership Act. Id. ¶ 67. We therefore concluded that "the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quotation and alteration omitted).

¶ 24. This case similarly presents a justiciable claim because the Town has formally asserted that it has authority to enter onto plaintiffs' land for the purpose of maintaining and repairing the legal trails and has created a procedure for implementing that authority, and plaintiffs assert that the Town has no legal authority to do so. This is a purely legal dispute that is appropriate for a declaratory judgment action, and resolution of this question will settle the dispute between the parties. Cf. Doe, 2020 VT 79, ¶ 16 (holding declaratory relief unavailable to mother who sought judgment that her husband posed no risk to her children because claim required factual determination rather than challenge to validity of law or rule, and any ruling would not have binding effect on future action by Department for Children and Families, state's attorney, or family division).

¶ 25. The Town argues that plaintiffs' action is premature because no person has yet applied to maintain the trails on plaintiffs' property. However, plaintiffs alleged in their complaint that the selectboard chair told them the Town planned to "sit on" the procedure until plaintiffs' litigation was resolved. It is reasonable to infer from this statement that the Town fully intends to implement the new procedure and exercise its asserted right to maintain and repair trails once the

litigation concludes. Moreover, the filing or granting of an application to exercise the Town's asserted authority to maintain trails would not add any new dimension to the purely legal question presented by plaintiffs: whether the Town has that authority in the first place. Thus, the fact that no person has yet attempted to maintain the trails on plaintiffs' property does not render this issue unripe.

¶ 26. We are also unpersuaded by the Town's contention that plaintiffs' feared injury is subject to "voluntary avoidance." The Town argues that plaintiffs have not alleged that anyone has applied to maintain the trails on their property and even if someone did, the Town would still have to review the application. This does not change the fact that the Town has asserted the right to enter, through its agents, onto plaintiffs' property for the purpose of maintaining the trails. As discussed above, we can reasonably infer that the Town intends to implement its new procedure once this litigation concludes. There is no indication that the Town's exercise of its asserted authority is contingent on any other actor or regulatory process. The situation here is therefore distinguishable from the cases cited by the Town, where the facts showed that the plaintiffs could avoid the threatened injury through their own avoidance or that the occurrence of the threatened injury depended on the uncertain actions of a third party. Cf. id. ¶ 15 (reasoning that mother's action seeking declaration that having her husband live with her and her children did not pose risk of harm to children was premature, despite statement by child-protection agency that it would recommend CHINS petition, in part because state's attorney, not agency, would ultimately decide whether to file CHINS petition); Beecham v. Leahy, 130 Vt. 164, 167-68, 287 A.2d 836, 838-39 (1972) (holding that no justiciable controversy existed as to plaintiff doctor who sought to preemptively challenge Vermont's law criminalizing abortion because doctor could avoid prosecution by not performing abortion).

¶ 27. "This case has reached the point of a clear controversy between the parties." Dernier, 2013 VT 96, ¶ 41. Allowing the matter to proceed is consistent with the purpose of the

Declaratory Judgments Act, which "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." 12 V.S.A. § 4722; see Neal v. Brockway, 136 Vt. 119, 121, 385 A.2d 1069, 1070 (1978) ("The Declaratory Judgments Act is a remedial statute entitled to a liberal construction to effectuate its salutary purpose."). Both parties will benefit from having the ultimate question—whether the Town has the right to maintain and repair legal trails within its borders—resolved. If we uphold dismissal here, plaintiffs will likely refile their action as soon as the Town takes further action. Given the ongoing dispute over the status of the legal trails, we conclude that "it would be inequitable to perpetuate the uncertainties of the parties any further." Cupola Golf Course, Inc. v. Dooley, 2006 VT 25, ¶ 16, 179 Vt. 427, 898 A.2d 134 (mem.). We therefore reverse the trial court's order and remand for further proceedings.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

¶ 28. **WAPLES, J., concurring.** I concur with the reasoning of my learned colleagues but respectfully write separately to offer additional guidance on the weighty issue of justiciability. As my colleagues note, ripeness is a jurisdictional requirement, "which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected and unrepresentative judiciary in our kind of government." Allen v. Wright, 468 U.S. 737, 750 (1984), abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014). As the United States Supreme Court has recognized, "[t]he difference between an abstract question and a 'controversy' contemplated by [a request for declaratory judgment] is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a

controversy." <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941). Thus, to the extent this case is ripe for adjudication, and I agree that it is, its circumstances represent the outer boundary of what this Court can consider to be justiciable for the purposes of maintaining subject matter jurisdiction. Otherwise, any such opinion would be rendered advisory, and offensive to our Constitution's mandate for the separation of powers. <u>In re Opinion of Justices</u>, 115 Vt. 524, 528, 64 A.2d 169, 171 (1949) ("By no possible construction of the [Vermont] Constitution . . . can this power [of a court to decide cases] be enlarged to include the giving of an opinion upon a question of law not involved in actual and bona fide litigation brought before the Court in the course of appropriate procedure.").

 

_____

Associate Justice